31 N.J. Super. 356 (1954)
106 A.2d 752
JOSEPH FARREN, PLAINTIFF,
v.
NEW JERSEY TURNPIKE AUTHORITY, A BODY CORPORATE AND POLITIC, AND ATLANTIC CITY ELECTRIC COMPANY, A NEW JERSEY CORPORATION, DEFENDANTS. ATLANTIC CITY ELECTRIC COMPANY, A NEW JERSEY CORPORATION, DEFENDANT AND THIRD PARTY PLAINTIFF-APPELLANT,
v.
RALPH CORNELL, THIRD PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 28, 1954.
Decided June 30, 1954.
*358 Before Judges JAYNE, STANTON and HALL.
Mr. Herbert Horn argued the cause for appellant (Messrs. Lloyd & Horn, attorneys).
Mr. S.P. McCord, Jr., argued the cause for respondent (Messrs. Starr, Summerill & Davis, attorneys; Mr. William F. Hyland, on the brief).
The opinion of the court was delivered by JAYNE, S.J.A.D.
A brief precursory statement will disclose the single specific question presented for decision. The point of the question is essentially one of law.
*359 On September 19, 1951 the plaintiff Joseph Farren suffered bodily injuries while participating as the employee of one Ralph Cornell, in the construction of a bridge across a turnpike at or near Swedesboro. He instituted an action to recover compensatory damages in which he alleged that his injuries and consequential losses were proximately caused by the concurrent and cooperative negligence of the defendants New Jersey Turnpike Authority and Atlantic City Electric Company.
In addition to answering the complaint, the electric company, by leave of court, caused process to issue and a third-party complaint to be served upon Cornell, who was, as previously stated, the employer of the plaintiff at the time of the occurrence of the mishap. The third-party complaint contained two counts, the first of which alleged that the injurious mishap encountered by the plaintiff was proximately occasioned by the negligence of Cornell, concluding:
"WHEREFORE, the defendant and third party plaintiff, Atlantic City Electric Company, demands that the third party defendant, Ralph Cornell, be adjudicated the party whose sole negligence caused the accident in question, or in the alternative, if it is determined that the third party plaintiff, Atlantic City Electric Company, was negligent, it be adjudicated that the third party defendant, Ralph Cornell, was jointly negligent and that his joint negligence concurred with the negligence of the third party plaintiff."
The second count alleged that there was an implied agreement obligating Cornell to indemnify the electric company against its liability, if any, to the plaintiff Farren.
In response a motion was made on behalf of Cornell, the third-party defendant, for a summary judgment in his favor. R.R. 4:58-3. At the hearing of the motion the electric company did not endeavor in any wise to support the alleged existence of any implied agreement for indemnification as alleged in the second count of the third-party complaint. The court concluded that there was no genuine issue challenging any material fact and that since the undisputed proof disclosed that Cornell was an employer whose sole liability *360 to the plaintiff arose from the provisions of the Workmen's Compensation Act with which he is complying, the first count of the third-party complaint failed as a matter of law to allege a cause of action for which relief could be granted. Judge Woods adhered to his previous decision in Yearicks v. City of Wildwood, 23 N.J. Super. 379 (Law Div. 1952).
The legal propriety of the resultant summary judgment is sought here to be impugned by the insistence that a tortfeasor who is liable to an injured person may have contribution by virtue of the terms of the Joint Tortfeasors Contribution Act of 1952 from an employer of the injured person, where the employer's negligence has contributed to the injury, notwithstanding the fact that the employment was embraced by the elective compensation provisions of the Workmen's Compensation Act.
Our attention is thereby immediately drawn to the statute allowing contribution between joint tortfeasors. N.J.S. 2A:53A-1. True, the statute declares that the right of contribution exists among joint tortfeasors, but the statute itself definitely elucidates the intended meaning to be ascribed to the term "joint tortfeasors" to be "two or more persons jointly or severally liable in tort for the same injury to person or property * * *."
It is evident that contribution is enforceable under the statute only against a joint tortfeasor as therein defined. Sattelberger v. Telep, 14 N.J. 353, 367 (1954); Kennedy v. Camp, 14 N.J. 390, 395 (1954).
It was stated in the decision rendered in Danek v. Hommer, 9 N.J. 56, 60 (1952):
"When the employer and employee elect to have their rights adjudged and fixed pursuant to the terms of the compensation act then the common law remedy in tort falls by reason of the statutory contract for compensation, based not upon the principle of tort but on remuneration regardless of fault to the injured employee."
There is no doubt that the purpose of the Compensation Act was to supersede the common-law redress in actions in tort between such parties. R.S. 34:15-2, 34:15-7; *361 United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157 (1950). The plaintiff employee could not lawfully maintain an action in tort against his employer, hence the employer is not one liable in tort. Vide, Baltimore Transit Co. v. State to use of Schriefer, 183 Md. 674, 39 A.2d 858, 156 A.L.R. 460 (Ct. App. 1944).
Moreover the impracticability of the application of the present Contribution Act to the instant situation is immediately discernible. The essence of the doctrine of contribution is the existence of a common monetary obligation to the injured person. The joint tortfeasors contemplated by the statute are those in aequali jure, each of whom is liable in tort to pay his pro rata share of the judgment debt. N.J.S. 2A:53A-3.
Under the existing law the relative responsibilities of the Electric Company and of the employer Cornell to the plaintiff were distinctly different. Succinctly stated, the legal obligation of the electric company, unless otherwise qualified, was to exercise reasonable care for the safety of the plaintiff, and for its dereliction of duty to pay to the plaintiff such a quantum of consequential damages as might be lawfully adjudicated. The plaintiff's employer was legally exempt from liability in tort but obligated to pay compensation to the plaintiff for his injuries arising by accident out of and in the course of his employment (although caused by the employer's negligence) in an amount controlled by the schedule embodied in the Compensation Act.
Can it be rationally supposed that it was the intention of the Contribution Act to obligate the electric company in consequence of its concurrent negligence with that of the employer to pay its pro rata share of the plaintiff's award under the Compensation Act? Why not? Because there is no joint or several liability in tort of those parties to the injured person, no equivalence of the monetary responsibility of each to be divided into pro rata shares.
And, then, it would seem fanciful to construe the words "money judgment or judgments for such injury," as *362 employed in the Contribution Act, to mean an amalgamation and embodiment of both the compensation award and the damages recovered in the tort action. The intrinsically essential component of the principle of contribution is equality of the liability and hence the equalization of the burden of discharging the judgment. "All who are equally bound are equally relieved." Kennedy v. Camp, supra. It was pointedly stated by Judge Tallman in Guerriero v. U-Drive-It Co. of New Jersey, 22 N.J. Super. 588, 603 (Law Div. 1952): "That the true test is joint liability and not joint, common or concurrent negligence."
Our interpretation of the Contribution Act and our acquaintance with the pertinently informational decisions guide us to the conviction that the summary judgment under review was justifiably granted.
Affirmed.